IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| REBECCA ROHRBOUCK, mother and next friend, and DILLON FROSH, minor child, by his mother and next friend,<br><br>    Plaintiff,<br><br>  v.<br><br>NORTH PLATTE PUBLIC SCHOOLS, et al.,<br><br>    Defendant. | 7:06CV5014<br><br><br>MEMORANDUM AND ORDER |

  This matter is before the court on defendant's motion for summary judgment, Filing No. 29, and motion to exclude evidence, Filing No. 41. Plaintiff, on behalf of her minor son, Dillon Frosh (Dillon), brought this case under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Act) and under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, alleging that the North Platte Public Schools discriminated against her son on the basis of his disability. Plaintiff requests compensatory damages and attorney fees. Defendant filed a motion for summary judgment[1] pursuant to Fed. R. Civ. P. 56 alleging (1) that plaintiff failed to exhaust her administrative remedies, and (2) that plaintiff was not entitled to benefits. The court has carefully reviewed the record and relevant caselaw and concludes the motion for summary judgment should be granted.

---

[1]Plaintiff moves to exclude the evidence submitted by the defendant, particularly documents listed as Filing No. 40, Exhibits 1 and 2, as defendant failed to produce these documents prior to this motion for summary judgment. Filing No. 41. Plaintiff argues these documents are damaging to her case. The affiant, Voneta Engler, represents to the court that these documents were inadvertently found in the wrong file. Filing No. 44. The court finds these documents are relevant and should be of no surprise to the plaintiff. No trial or pretrial dates have been set, the discovery deadline has not passed, and depositions have not been concluded. Accordingly, the motion to exclude is denied. *See Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004).

**STANDARD OF REVIEW**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light

most favorable to the nonmoving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion for summary judgment, district court should not weigh evidence or attempt to determine truth of matter). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

**BACKGROUND**

Dillon began attending school in 2001 as a kindergarten student. Each year Dillon's classroom teacher asked for the assistance of a Student Assistance Team (formally called MAT) (hereinafter SAT)[2] which is a group of educators, teachers, counselors, who make determinations on whether a student is disabled or needs additional help. On or about April 8, 2002, the school conducted tests on Dillon and concluded he had some behavioral issues and recommended specific classroom accommodations. His intellectual test results indicated Dillon was in the average range and did not qualify for special education services. On December 5, 2002, defendant tested Dillon and again denied special education

---

[2] A SAT team evaluates students and tries to help classroom teachers with student issues. In addition, the SAT team can refer a child to a multidisciplinary team, known as MDT, for evaluation regarding a verified disability. *Costello v. Mitchell Public School Dist. 79,* 266 F.3d 916 (8th Cir. 2001).

3

services for him, finding the classroom accommodations were working. The same occurred in 2003. The school district, defendant's classroom teacher and Dillon's parents obtained a specialist to meet with Dillon and assess him. On December 4, 2003, plaintiff's doctor, Lee Kimzey, Ph.D., diagnosed Dillon with Attention Deficit Hyperactivity Disorder (ADHD). Plaintiff alleges that Dillon's ADHD required medication and special educational services.

Plaintiff states that defendant continued to discriminate against her son after that time and in fact began to punish him for his behaviors. Plaintiff argues the school excluded Dillon from a number of school benefits, including library, physical education and music programs. Defendant allegedly shared information about the minor son's behaviors and disability with other parents and students.[3] Also, plaintiff contends she requested evaluations and additional services on a number of occasions that she says were not granted. In October 2005, another student accused Dillon of having a knife at school. It appears that no knife was found, and Dillon was not disciplined. His mother was informed of the incident, and thereafter she transferred him to another elementary school within the North Platte school district. Plaintiff states that after the transfer her son was immediately determined a qualified individual with a disability who received special education services.

Defendant contends that the tests performed on the minor child indicated he was not entitled to special education services as he did not meet the required criteria for disability until December 2005. Defendant contends that each year Dillon was tested and his achievement scores were in the normal range. Aff. of Principal Mary Derby, Filing No. 31. Each year a SAT team analyzed Dillon's tests and classroom issues. The SAT team

---

[3]Plaintiff makes this allegation in her affidavit, Filing No. 39, ¶ 9, Aff. of Rebecca Rohrbouck, but no evidence has been offered to show the defendant shared any private information with parents or students.

4

did not believe Dillon's test scores and behaviors qualified him for special education services.  At the end of second grade the school recommended that Dillon remain in second grade, but his mother chose to have him proceed to third grade.  His mother accepted full responsibility for his educational placement in third grade.  *Id.*, Ex. 4 to Derby Affidavit.  Defendant contends Dillon was never treated or disciplined any differently than any other child at their school.  However, certain classroom accommodations were made early on as suggested by the SAT team such as seating Dillon close to the teacher, shortening his assignments, small group and one-on-one instruction, and reading assistance.  *Id.* at ¶ 7.  These accommodations seemed sufficient to the defendant, given that Dillon did not meet the disability criteria.

Plaintiff argues that they never received the appropriate notice under the IDEA.  Defendant states it always gave Dillon's mother notice of the testing and the results.  More importantly, Voneta Engler, a speech pathologist and member of both Dillon's SAT team and Multidisciplinary Evaluation Team (MDT), submitted an affidavit with attached exhibits which shows that at the MDT meeting in November 2004, plaintiff received notice of her rights, which explained her parental rights in special education.  Filing No. 40, Exs. 1 and 2.  So at least by November 11, 2004, Dillon's mother received notice and signed a statement saying she had received a copy of the notice which explained her appeal rights.  *Id.*  In addition, Dillon's mother agreed in December 2004, with the MDT decision.

**DISCUSSION**

*Applicability of the IDEA*

Defendant first argues that the IDEA is not applicable as Dillon did not have a disability as defined in the statute until he met the criteria in December 2005.  20 U.S.C.

§ 1401(3). Second, the school district argues it need not give notice since the IDEA did not apply, and regardless, it provided notice in November 2004, when it determined the IDEA did apply. Further, plaintiff received notice of each testing and the results each year. Third, the school district contends that compensatory and punitive damages are not permissible under the IDEA.[4] *Heidemann v. Rother*, 84 F.3d 1021,1033 (8th Cir. 1996); *Dohmen v. Twin Rivers Public Schools*, 207 F. Supp.2d 972, 980 (D. Neb. 2002). Fourth, defendant argues that in any event plaintiff did not exhaust her administrative remedies. Defendant also argues that a diagnosis of ADHD, absent supporting testing and evaluation, does not automatically qualify an individual as disabled. Filing No. 40, ¶ 7, Aff. of Voneta Engler.

Plaintiff argues that ADHD has long been recognized as an "other health impairment" which is a specific learning disability. *Larson v. Independent Sch. Dist. No. 361*, 2004 WL 432218 (D. Minn. 2004). Plaintiff contends that the minute the school district conducted the IDEA, the notice provisions were applicable, and plaintiff was entitled to receive notice of everything, including denial of change of status, from that point forward. Plaintiff argues she did not receive the required notice and, therefore, she had no opportunity to appeal the erroneous findings by the school district. Such a procedural denial, notes defendant, must cause loss of educational opportunity to the individual to be actionable. *N.L. ex rel Mrs. C. v. Knox County Schools*, 315 F.3d 688, 693 (6th Cir. 2003); *Costello v. Mitchell Public School Dist. 79*, 266 F.3d 916, 922 (8th Cir. 2001).

Plaintiff contends that the failure to adequately test and diagnose Dillon, the failure to notify plaintiff of her appeal rights, and the violations of Dillon's right to privacy constitute

---

[4] Plaintiff now concedes that compensatory and punitive damages are not recoverable under the IDEA.

bad faith and gross misjudgments.  Punishments and disciplines were meted out for behavior directly related to his disability, argues plaintiff.  The Nebraska district court has stated that a disabled child can be disciplined, assuming such discipline is not for a characteristic of the disability.  *Dohmen*, 207 F. Supp.2d at 977.  Further, plaintiff argues that requiring exhaustion at this time would be futile, as Dillon has suffered emotional damages already.

The court will first address the exhaustion issue.  Defendant has moved to dismiss plaintiff's complaint on the basis that the claims are precluded by the IDEA for failure to exhaust administrative remedies.  The purpose of the IDEA is to assure that children with disabilities are provided an appropriate and equal education and to assure parental involvement.  20 U.S.C. § 1400  The IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans With Disabilities Act of 1990 (41 U.S.C. § 12101, et seq.), at Title V of the Rehabilitation Act of 1973 (29 U.S.C. § 791, et seq.) or other federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  A complaint procedure, due process hearing, and appeal are provided for under this statutory scheme.  20 U.S.C. § 1415 (f) and (g); 20 U.S.C. § 1415(b)(6). Plaintiff does not contest that the claims raised in this lawsuit fall under the purview of the IDEA.  Further, plaintiff does not contend that she exhausted her administrative remedies.

As stated in *Birmingham v. Omaha School Dist.*, 220 F.3d 850, 854 (8th Cir. 2000), "[t]he IDEA, on the other hand, requires a parent, dissatisfied with an educational decision regarding his/her child, to exhaust state administrative remedies before proceeding to

7

federal court." *See also Blackmon v. Springfield R-XII School District,* 198 F.3d 648, 655-56 (8th Cir. 1999) (parent must exhaust administrative claims for issues sought to be decided by judicial review, thus allowing agencies to apply their expertise and to avoid bypass of established Congressional procedures). Courts recognize only three exceptions to this exhaustion rule: futility, inability of the administrative remedies to provide adequate relief, and the establishment of an agency policy or of a practice of general application that is contrary to the law. *Blackmon v. Springfield R-XII School District*, 198 F.3d at 656.

Plaintiff argues that she did not receive notice of Dillon's rights under the IDEA from the school district. There may have been some merit initially to that argument, as it is the responsibility of school districts to notify parents of procedures available to them with respect to identification, evaluation, educational placement, a proposal to change the educational program or a refusal to change the educational program. *Stauffer v. William Penn School District*, 829 F. Supp. 742, 748-49 (E.D. Pa. 1993); 20 U.S.C. § 1415(b)(3); 20 U.S.C. § 1415(c) and (d). Throughout the process, parents must be informed of their procedural rights under the IDEA. *Gill v. Columbia 93 School Dist.*, 217 F.3d 1027, 1035 (8th Cir. 2000). However, the court finds that at least by November 2004, plaintiff received a copy of her IDEA rights and her right to appeal. Plaintiff did not initiate her appeal rights nor did she attempt to exhaust her grievances with the school district as set forth in Filing No. 41, Ex. 1 and 2. Plaintiff has made no showing that such exhaustion and appeal processes would have been futile or inadequate. Accordingly, the court finds the IDEA claim must be dismissed for failure to exhaust administrative remedies.

*Applicability of § 504 of the Rehabilitation Act*

Defendant contends that § 504 of the Rehabilitation Act is not applicable in this case. Section 504 prohibits discrimination or participation in, or denial of benefits under, any program receiving federal financial assistance from any program or activity. 29 U.S.C. § 794. The school district again argues that the evidence will not support a showing that Dillon is an "individual with a disability." Thus, § 504 would not apply. Plaintiff must show Dillon was qualified, he was denied benefits, and he was discriminated against on the basis of his disability. *M.P. ex rel. K v. Independent School Dist. No. 721*, 439 F.3d 865, 867 (8th Cir. 2006). The Eighth Circuit also stated that the plaintiff must show bad faith or gross misjudgment. *Id*. Even though the court finds plaintiff failed to exhaust the IDEA claims, it can still consider the § 504 claim even absent such exhaustion. *Id*.

In support of her argument that defendant is guilty of gross misjudgment or bad faith, plaintiff argues that because Dillon was denied certain educational benefits, and his privileges to use the library, have recess, go to music and physical education were withheld, § 504 is violated, which plaintiff views as consistent discrimination and segregation. Further, plaintiff argues Dillon had ADHD and received medication at school for this disorder. Each day his name was announced over the intercom, and he was sent to receive his medication. According to plaintiff, when she transferred Dillon to the new elementary school, he immediately received special education services. In addition, his grades subsequently dropped, which plaintiff thinks indicates defendant overinflated Dillon's grades.

The court will first address the gross misjudgment or bad faith argument. The school district argues that under any scenario there is no evidence of bad faith or gross

misjudgment. *M.P. ex rel K,* 439 F.3d at 868; *Birmingham v. Omaha School Dist.*, 220 F.3d 850, 857 (8th Cir. 2000). Such a showing is required to make a claim in a § 504 case. The Eighth Circuit has found that the IDEA exhaustion is not applicable to § 504, but under § 504 a plaintiff must show bad faith or gross misjudgment. *Thompson v. Board of Special Sch. Dist. No. 1*, 144 F.3d 574, 576 (8th Cir. 1998). The court determined in *Thompson* that it was unlikely the student had presented sufficient evidence of bad faith or gross misjudgment and dismissed these claims. *Id.* at 580. Even when assuming the facts of the instant case in a light most favorable to Dillon, these facts do not rise to the level of gross misjudgment or bad faith. As in *Thompson*, the evidence in this case at best shows a disagreement by professionals as to the proper diagnosis of Dillon. *Id.* Gross misjudgment has been defined as a gross departure from accepted standards among educational professionals. *Heidemann v. Rother*, 84 F.3d 1021 (8th Cir. 1996). An evaluation of a student is not discriminatory just because a court might see it differently or because the school district failed to accurately evaluate a student. *Monahan v. State of Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982). The school district simply must exercise professional judgment and not grossly depart from the accepted standards. *Id.* at 1171. In this case there is no evidence before the court that the school district grossly departed from accepted standards. There is no evidence as to what the school district should have done or failed to do that would rise to the level of gross misjudgment or bad faith. Accordingly, the court finds plaintiff has failed to meet its burden of presenting evidence of gross misjudgment or bad faith, and the summary judgment is granted with respect to the § 504 claim.

THEREFORE, IT IS ORDERED THAT defendant's motion for summary judgment, Filing No. 29, is granted and this case is dismissed.  It is further ordered that plaintiff's motion to exclude evidence, Filing No. 41, is denied.  A separate order and judgment will be entered in accordance with this memorandum and order.

DATED this 10th day of May, 2007.

BY THE COURT:

s/Joseph F. Bataillon
Chief United States District Judge